Thank you. Okay, case number three. Number 24-10956, Lashonda Peeples v. National Data Research, 84. Mr. Eidelman. Good morning, Your Honor. Good morning. May it please the Court, my name is Levy Eidelman. I'm here on behalf of Lashonda Peeples, plaintiff appellant. This case is about Ms. Peeples' raised two causes of actions below under the Fair Credit Reporting Act, FCRA. One under 1681EB and the other under 1681I. Essentially, she applied to try to get into a pre-med program at college, and the college told her as part of her application she had to obtain a report, a background check, from NDR, the appellee. The report came back with a record that had been expunged. She disputed and NDR investigated and added an expunged notation to the record and argued that that was sufficient and they would not do any further, they would not remove the record or do any further investigation. The district court found that as a matter of law, this background check issued to Ms. Peeples, that she was supposed to pass on to the college, was not a consumer report because it failed to meet the statutory definition. According to the district court, because the report was not actually communicated to a third party, in this case the college, it did not meet the definition. We think that is error. We think that the statute does not contain that requirement, and this court should not impose it on the statute. We have language in some cases, I'm not sure you're holding, but we have language in some of our cases that suggest exactly what the district court concluded, that you need transmission for the report to be a consumer report, at least under 1681E. What do you say about that language? Correct, Your Honor. I think that Collins is the most prominent of those that this court decided. In Collins, the issue was that the court was distinguishing between a 1681I that says credit file versus 1681EB that requires a consumer report, and the court said that a file exists in the database of the CRA, the Consumer Reporting Agency. That's stale. That's just sitting there in the database. That has not been communicated, as opposed to a consumer report under E that requires a communication. And, sure, Collins used the term third party. You know, that's ficta, of course, as Your Honor knows, but I think that's more than just ficta. I think that's kind of a shorthand the court used, because in 95 to 99 percent of these cases, the report is going to be issued to the third parties doing the evaluating. But doesn't that language hurt you with regards to your 1681E claim? Because here that report ultimately wasn't communicated to the medical school or the school that she was trying to get into. It's certainly an issue we need to deal with. And I'd point to other precedents from this court, Yang and Nunnally. In Nunnally, the court said that the court kind of wrestled with, throughout the ficta there is the language of a disclosure versus a consumer report versus a consumer file. The court said the file is the information existing in the databases that the CRA holds. The consumer report is information derived from the file, and the disclosure is just the information that's a full reflection of the credit file that's passed on to somebody. So there are instances in which a consumer can request their disclosure, and then the CRA has to provide them their entire file. And then there are other instances in which a consumer report, which is just partial information from the file, and the court didn't get into whether that has to be communicated with. It surely has to be a communication. That's in the definition. It must be communication, but to whom the statute doesn't say. In fact, the statute... We don't have any cases that analyze the definition of a consumer report as set forth in the FCRA. I think this court in Nunnally and Yang spoke to the issue. In Yang, for example, there was a report that's a Geico case. Geico pulled a report from Equifax about an insurance claim, so they wanted to find out about the consumer. In this context, with respect to the issue of whether it has to be disclosed to a third party, we haven't analyzed that issue. We've analyzed the difference between a credit report and a credit file. That's correct, but I want to say that Nunnally does speak to it in a way, because in Nunnally, the consumer report was issued to the consumer. So the statute says that after a reinvestigation, the CRA must issue the results of the investigation plus a consumer report to the consumer who disputed. And the court in Nunnally said, well, that language, consumer report there, doesn't mean a complete reflection of the entire credit file. It just means essentially how the information looks after the investigation. And that would constitute consumer report language under I of the statute. So we see in Nunnally, consumer report was kind of information passed to the consumer only and was not expected to be used by anybody else, was not expected to be passed on. But if we look back at the definition, and surely there's some tension between Yang and Nunnally. What's a disclosure in Nunnally would probably constitute a consumer report under Yang. Yang said that the statute says it's a communication, a consumer report is a communication that is used or expected to be used or if information is collected in whole or in part to use as a factor to determine a character or eligibility. And the Yang court said, well. Your point is, tell me if you think I've incorrectly stated it, is that a communication can be to the consumer herself. Correct. And I think Collins is maybe the strongest. Forget our circuit. Any court in the country that explains that definition as you understand it. There is no requirement of transmission to a third party. It's enough if the report is given to the consumer herself. What's the best case that you think explains that statutory analysis? The Ninth Circuit has some case law on this. And certainly the Ninth Circuit in the Gumond case, I think it's called Gumond. But it's explained in the district courts. G-U-I-M-O-N-D. And that's been further explained in district courts, the Ninth Circuit in Minton, and that's in Nevada and in Arizona. That's the case Minton did the best job on that. But in the circuit. You mentioned the language and the definition of a consumer report used or expected to be used. So is your argument that here the consumer report was expected to be used, and in fact the defendant knew it was going to be used for purposes of providing it to the school? Absolutely. And the court did not even begin that analysis. The court said, well, it wasn't actually passed on to the third party. The court didn't say, well, it's still a report if it's expected to be used or even collected in whole or in part. If you go further, in Yang, it says that the information was collected. It doesn't matter why it was even communicated, so long as the information originally was collected to provide it for a credit purpose. So there Equifax provided the report not for a credit purpose. So certainly we should look to the statute, and we urge the court to do so, and certainly maybe to clarify. And the court doesn't have to go there, but there's kind of a tension between Yang and Nunnally, and certainly the term third party is not on the statute. We urge the court to look at the words used, expected to be used, or collected in whole or in part, to find that this was certainly, it may be a consumer report. Again, as a factual matter, the court didn't look to whether we found the correct intent or knowledge on behalf of, on the part of NDR in furthering the report to Ms. Peoples below, because the court said we didn't need to get there. I'm getting on to your other arguments. I think we understand your answer on that. The second cause of action under 1681I, the court dismissed that because the court determined that adding the expungement notation to the record was sufficient to render the record accurate, so that NDR does not need to remove the record from the file. Can I ask you just a factual question? I haven't looked for this in the record, so I haven't seen it. The expungement notation also still listed the conviction, or it was just a notation with a date that said expunged? It listed the conviction, and underneath it was a red box that said expunged. Was that on the document that Ms. Peoples provided, or was that actually in the court records? That's what NDR made the file look like after she disputed to NDR. But the information that there was a conviction and that it was expunged came from her? Is that right? Rather than anything that you could find in the South Carolina public records? Correct. I mean, the South Carolina public records doesn't have a record, but NDR, based on the expungement order that Ms. Peoples provided, added the term expunged. Did she send them a copy of the expungement order? Is that how it got in? Is that what? Correct. Along with her dispute, she provided the expungement order, and NDR said, okay, we'll add the term expunged. They didn't correct it. You say it's not a correction, but anyway, they did enter that. They added the term expunged to the record and included both in the file. So that subsequently, about six months later, there's some factual dispute, but we contend and we think there's evidence that my client was able to obtain another report from NDR, and it reflected the record with the term expunged. That's when she tried to go to college for the next semester using the report, and again, she did not want to forward that because of the expunged record in there. Your position on 1681I, and again, tell me if I've gotten it wrong, is that the expungement notation was not the most accurate and gave a misleading impression of the situation, right? To take language from a Third Circuit opinion, Temple University, whether technically accurate information was misleading in such a way and to such an extent that it can be expected to have an adverse effect is generally a question to be submitted by a jury because you're looking for maximum possible accuracy. That's correct, Your Honor. I think it's correct, and I think this Court in Erickson maybe formulated that even better and said that it must be free from the potential for a misimpression on the third party. But in one way, and I understand your position, and I'm just playing devil's advocate because I'm trying to figure out the boundaries. In a way, the revised report was technically accurate. She did have a conviction. It did get expunged. May I respond?  Just don't worry about the time. Just go. I guess maybe in rebuttal I'll refer to Loesch and You can do it now. It's our question, so don't worry about the time. You're not eating into your rebuttal time. So I'll just note that after our briefs have been submitted, the Court decided Rhodes about six months ago. The Rhodes case, I think, is instructive. In Rhodes, the Court said we still look to state court orders, developments on the record, and we looked at a public record, and we see if there's an order of dismissal or anything else that removes kind of the conviction and that we should look to that, and that would be controlling. And Rhodes proceeded on the assumption that federal law applied to the term conviction and still said we need to do the analysis of what else the Court did about this record, and that has to be reported. And, of course, expungement is technically accurate. We're adding the term, but we think that just totally negates the actual substance of the expungement order, which has to be accounted for. Do you agree that federal law, that we should look to federal law regarding what is a conviction? We think federal law is relevant to the 1681C claim that some of the cases talk about, but that's not raised here. So we think here it's just as a – there's kind of an across-the-board accuracy standard that applies whether it's technically labeled a conviction or not under federal law. The state laws that have expungement have all kinds of different provisions. Some say it just shall not be disclosed. Some say, like South Carolina, that the record shall be destroyed. Does that matter for purposes of determining what a conviction is? I think it does because I think we have to give import to the Court's subsequent order, and I think there's an Arizona case where in Arizona, removal from the public record is not required, and that turned out differently. We think that the state court order matters. We have to look at what all the state laws mean with regard to convictions and what expungement means, but anyway. I have a question about your accuracy argument with regard to 1681. You kind of glossed over the fact that EB says to assure maximum possible accuracy, and that's where the cases you cite deal with making it not misleading, whereas there's a different accuracy test in 1681I, which is where the disputed information is accurate. Okay, so there's two different tests, right, that apply to EB versus I. I don't think I agree with that. Well, that's how it is. There's different statutory language articulating the accuracy test. They both use language. They both contain words. They use language of accuracy. I know. One says you've got to have procedures to assure maximum possible accuracy. That's one language. Is that correct? That's correct. All right, and so that's where the Temple case and the others get this can't be misleading because that's how they come up with that. Then you've got 16—I'm just asking if I got this right. I know you may not agree that there's any difference. You may say the language makes no difference. But the next one says reasonable investigation rate, whether the disputed information is accurate. That's the text there, correct? Correct. So they're different tests, right? Yes. I'll just say that. I think Loesch said that it's kind of the same standard of accuracy. But I'll say even more, the point of the dispute procedure— But the Temple case is under the first one, EB. They're not talking about 1I in the credit file. They're talking about consumer reports, which is the first one, not credit file. I think Loesch had the analysis on I as well, if memory serves. Okay, roll it again. I think we've been answered. Okay. Thank you, Your Honor. Okay. You've saved all of your time for rebuttal. The Court, I'm James Penland, and I represent NDR. Good morning. And it's a great pleasure and privilege to be before Your Honors today. And I'd like to try to address a couple of the questions that the Court has posed. The first thing is obviously we have two sections. We have the section that is the reporting section and the database section, which is I. It seems like truly there should be two different tests in terms of how the store looks at that. I requires that the database be accurate. And by accurate, I think that the best way to say that would be if you were going to apply a test for accuracy, you would say, did it happen in the historical sense? So that if something is in the database record and it happened and it's historical, then it's okay. Let me give you an example on, let's say, just a processing situation. Credit files are coming in all the time, and they're aging out, and we know that you can't report a lot of things after seven years. So the question is, do you have to throw away everything in your database that's older than seven years? And the answer should be no, because you have other types of investigations. For example, you have national security investigations that require stuff going way back. So the question of the database is whether it is historically accurate. And in this case, it is historically accurate. In this case, my client gave a credit report, showed a conviction. Ms. Peoples came back and she said, this conviction has been expunged, and the expungement order is in the record on Terry Sweet's deposition at Exhibit 3. And Mr. Sweet, who this is basically a sole practitioner credit report company, he went back and he investigated and he looked at her stuff, and he decided that her evidence was sufficient to establish that that conviction had been expunged. And so what he did was, in his database where he has all this stuff accumulated, he put three stars, expunged, and three stars. And that's what showed in her database record. What extent do we need to or should take into account the intricacies of state law on expungement to figure out accuracy under either E or I? I believe federal law ought to apply as to convictions because it's so uncertainty. Why are we doing that if it's a state conviction? The text of these provisions says nothing about conviction. There's no statutory term about conviction in either E or I. It's about all information. So it's not like we're construing a statutory term conviction in this federal statute. We're talking about communication, used, expected to be used, maximum possible accuracy, or prevent the appearance of inaccurate information. None of those provisions use the word conviction. If it's a state conviction, why shouldn't we be looking to state law? Well, I think you would look at state law as to whether it exists or not. If an expungement order says, think of the most broad-based expungement regime you can, where if you get an expungement of a criminal conviction, it says this conviction is expunged and it is as if it had never occurred. That would be essentially a setting aside of the conviction. No, it's not. It says expunged. They just don't want anybody to have record of it. That's the benefit you get from expungement under that state law. So how do you accurately report that state of affairs? I think, and I think there's some good policy about this. The state law expunges, and it expunges so that it's not easily found, but it doesn't erase history. Well, my understanding of the record in this case is that actually when the credit reporting agency went back to confirm whether or not she had a conviction, the conviction could not be found. Could not be found. That is an accurate statement. So the reinvestigation was based solely on the information that Ms. Peoples provided? Correct. And when you look at the expungement order itself, it talks about stuff being done away with, but down in the bottom part of the expungement order, it talks about how really the conviction continues to exist in terms of its effect on various things in the South Carolina regime of handling things. Thanks. But let me go back to sort of the first top of this is this distinction between the database and the reporting. It is the responsibility in the reporting part to be accurate and not misleading. It's the responsibility in the database part to be historically accurate. So your database could have all sorts of stuff that you can't report that goes way back and still be accurate, and it would be a violation to use that database to report, for example, a lot of things that are more than seven years old. But there's no good reason to delete anything that is historically accurate from the database because it may be useful for other purposes, for example, national security investigations. And there's a lot of stuff in the statute about national security investigations. So the question of the database should be simply, is it accurate historically? The next question is, is what can you put in a report? And that goes to your algorithm, however your query comes into the database. That goes under A and not I, or B or whatever. It goes under the reporting part that requires maximum accuracy. And I think it would be helpful to the law if that distinction was clear because it would clear up things in terms of what a credit reporting agency has to do. They have to make sure that whatever is in their database is historically accurate. Now, I've had cases where a mortgage company or a credit reporting company, because people are reporting inaccurate stuff to them, it keeps popping back up. And there are specific provisions in the Fair Credit Reporting Act to prevent that. But that goes to this algorithm to make sure that what is accurate in the database gets reported according to the standards of the reporting law. Now, one of the things... I want to go back to Judge Jordan's question for a minute about state law and his hypothetical of a state law that essentially rendered the conviction as if it were void. Let me reconsider that a moment. Yeah, I'll let you finish my question. I'm sorry. The Supreme Court explained in Dickerson that Iowa expunction law did not alter the fact of the conviction, but it did that based on the Iowa law, which didn't expunge the record completely. So does that make any difference here? Because here, South Carolina law does expunge the record of the conviction completely. It does not. Why not? Well, because in the order of expungement and the law, it says that portions of that conviction are retained for the purposes to make sure that that expungement order does not get used again. It doesn't... All it does, if you read carefully the statute... So it was just for one particular purpose. Yeah, but it... That's it. That's the only reason. It doesn't change the historic event. What are the four exceptions listed in the expungement order? Do you have it there at hand? I do, Your Honor. Your Honor? It's hard to read. It says, except as follows. Arrest and booking record associated bench warrants, so and so, shall retain pursuant to 17140 by law enforcement, detention and prosecution agencies. And they may retain indefinitely other stuff under other sections. And probation records, which don't apply in this case. And non-public information retained by law enforcement under these other actions under the SLED Act, whatever that is. In other words, it really is just a hiding statute. It just hides it. So we get back to the question of this clearly requirement that out of the database it has to come whatever is accurate in the database and only that which is permissible to be reported would go into the consumer report. But that gets us to the real policy question on this. Is this a consumer report? That's not a policy question. Well, I mean a legal question. I'm sorry. But to some extent it is a policy question. I'll follow up on that. Is it a consumer report? And the consumer report statute very clearly says that used for the purpose of credit or employment or insurance or other things and education doesn't fall within any of those. Used or expected to be used. That may not change your argument, but there's more to the statute. The question is how can someone know what something is expected to be used when somebody goes online and does it and the user agreement, which is a question of fact is whether or not she clicked on it or not, says you can't use it but for your own personal use and you can't use it for employment or credit purposes. That is a fact question. If we go back, we'll do that. But the question is what is the purpose of the statute? And the statute, even if it was expected to be used for education, which in this case it probably was expected to be used for application for school, although there's no way my client would have known that Ms. Peoples was an applicant to one of the medical team schools. But it's still education. It doesn't fit within any of those criteria. So the question, the broader question is what is the limit of reports that people can make dealing with criminal background within the statute? Is there a large VIN diagram and credit reports are in the part of it? Or does the Fair Credit Reporting Act completely encompass criminal background checks at all? Well, you may be asking the wrong question. It's not credit report, it's consumer report, right? Well, consumer report. Okay, consumer. But does the background... If the consumer report contains criminal background information, then that's part of the report. There shouldn't be any dispute about that, right? It is part of the... But the question is broader. For example, can you get a criminal background report on your daughter's boyfriend? You mean, can you get it legally or is it... Legally.  Can you get it legally? Can you come to my client and order a criminal background check for the purpose of finding out whether or not her boyfriend has been convicted of some crime? So your question is what is the parameter of these reports? If I can hire him, I probably can. If I'm legally hiring him because he's my daughter's boyfriend... If you're going to hire him, that's a different... ...using it for employment purposes, which is one of the allowable uses in 1681's definition, right? If you're going to hire him, you've got to step through all of that stuff of getting permission and all, but you're not going to hire him. You just want to know whether or not if he drives his car, your daughter's going to be hurt. That's a different question than asking for his criminal background check. His criminal background may have nothing to do with whether he's a safe driver. Well, he may have... He could have a criminal background and be the safest of drivers. Yes, but he also could have DUIs or he could have been... Yes, he could have been. Those categories can overlap. So... I'm running out of time. That's what we were talking about. Keep going. The question, the fundamental question is, is a credit report expected to be used for educational purposes within or without the statute, which says employment, insurance, or credit? It says business transaction. Business transaction. Otherwise, there's a legitimate business need for it. Why wouldn't this be a legitimate business need she had? This act has a lot of provisions. So which definition of consumer report are you looking at? I'm looking at... Because I was looking at 1681 AD. That's what I'm looking at. AD1. That's what I'm looking at. And it says to establish used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes, employment purposes, or any other purpose authorized under various other sections of this title. There's no mention of the word education anywhere in the statute or the definition. So what we seem to have is we have all criminal reports. Some criminal reports are covered under the Fair Debt Collection, Fair Debt Reporting Act, and others are not. And the question is, does a report expected to be used for admission to a university fit within that definition? Well, I guess the question then is, is it in connection with a business transaction initiated by a consumer? If you think of admission to an institution of higher learning as contractual in nature, maybe. I would say it is a maybe. Then the question is, in terms of the first question that was asked that you brought up at the beginning, was the question of whether publication is necessary. And this court has certainly suggested that publication is necessary and important because this is really a liable statute and it protects people from liable. To focus in on whether publication is necessary and why it should be necessary is to focus in on what damage this statute seeks to solve. We have taken you way over your time, but you can have 30 seconds to wrap up.  I was going to say the statute talks about in its preamble its purposes and its purposes is to make sure you have accurate this, this, and that. In order to have damage from inaccuracies, though, it requires the transmission not just to the consumer, but to the third party because the damage flows from the transmission to the third party, not the transmission to the consumer who is upset because she had a criminal conviction and she can't escape it. All right. Thank you very much. Thank you, Your Honors. I have a question for you. If the expungement report has some listed exceptions and one of them is that law enforcement can keep records of the arrest and the conviction for certain purposes, why isn't a notation of expungement accurate? I think that the public record, the publicly available records that the court has should be the focus, should be the inquiry as to whether something is accurate. I think this Court in Rhodes, in the recent Rhodes case, said that because there the court did not enter the subsequent dismissal order, even though the statute said it should be automatically dismissed, but the court had to enter that dismissal order and the court did not do that and therefore it was accurate reporting in that case because the record reflected the conviction without the subsequent dismissal order, so that was accurate. I think we have to look at the publicly available records, especially here, because the report here not only contains like five pages of these other databases we searched and those are all the public records of courts, even the record itself says the source, you know, South Carolina, Spartanburg County, that was the stated source multiple times in the report and anybody looking at the report would think that, you know, maybe this is like, you know, Indiana does that where they keep the expunged records in the record and just add the expunged notation. Maybe this is in the public record, but it's not. And I think my client should have that benefit of the expungement order. I'll just note also some of the other issues raised in terms of use and the purpose clause, whether education is part of it, I think, you know, I don't think those are on appeal here today. I don't think the district court has made any conclusions about that, but I'd point to Yang where Yang expressly took the 1681B permissible purposes and incorporated that into the definition under 1681AD to say that business transactions, for example, are also, if they're communicated for that purpose, that's also a consumer report. About the, I think NDR in its brief concedes that if conviction had been overturned or reversed, that it would not be accurate to maintain that information in the credit file. Oh, sorry, in a consumer report. And I think that that's very similar to what we have here. I want to circle back for a moment, if I may, to the accuracy standards between 1681EB and I. Again, I'll point to Loge, but I think if we look at the purpose of the dispute procedure under 1681I, the idea is to give the consumer the opportunity to remove information from his file so that it may not be reported in the future. The idea that any historical information may be kept in the file so long that it's not subsequently reported, I think defeats the entire purpose of the dispute. Essentially, it tells the consumers, CRA tells the consumer, trust us, it's in our file, we're going to keep it in our file, but don't worry, we're not going to report it. And that defeats the whole purpose of the dispute provision under 1681I. I'll just note as a practical matter. There are a lot of things that keep it in those files that they don't report. I'm not sure if they're allowed to do that. I think that any time we find inaccurate information in a consumer's... In a 7-year rule, they have to take everything out of the database? Correct. Usually, a consumer would not find out what's in the database unless they receive a report. They can ask for disclosure, and that's everything that's in their file. If they get a disclosure and find information that's more than 7 years old and dispute it, of course, the CRA would have to remove that. I don't have citations on hand for that. But I think that that's very clear from the statute. To the extent, if the court decides that the accuracy standards are different, I'd say that in this case, there is a subsequent consumer report. In other words, another EB violation after the dispute, when she got her report later, and that report contained the record with the expungement notation, and we made the same. But the higher accuracy standards, if there are a few standards, I think would be applicable in that instance. If the court has no further questions. No, we don't. Thank you both very much. Thank you. We're recessed for today. All rise.